

JAN - 8 2010

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| CHASE BANK USA, N.A., | 2:07-CV-975-ECR-GWF |
| Plaintiff, | |
| vs. | **Order** |
| NAES, Inc., a Nevada corporation; MICHAEL FITZPATRICK, an individual; STELLAR SERVICES GROUP, an organization of unknown origin; CHRISTOPHER ROBINSON, an individual; THERESA LYNN MATSON, an individual, | |
| Defendants. | |

Plaintiff Chase Bank USA, N.A. ("Chase") alleges that Defendants are engaged in various debt elimination schemes, which have induced Chase customers to submit meritless billing disputes and file frivolous lawsuits against Chase.  Now before the Court are a motion to dismiss (#80) filed by Defendant Theresa Matson and a motion to dismiss (#81) filed by Defendant Stellar Services Group ("Stellar Services").  In addition, Stellar Services has filed a "Motion for Oral Argument Pursuant to Local Rule 78-2" (#103).

The motions are ripe, and we now rule on them.

## I. **Factual and Procedural Background**

This lawsuit was filed on July 23, 2007, and Chase's First Amended Complaint ("FAC") (#64) was filed on March 19, 2009.[1] Chase alleges that Defendants are involved in "fraudulent or fictitious debt elimination schemes" conducted "via the Internet and other marketing routes." (FAC ¶ 11 (#64).) As part of these schemes, consumers are advised, for example, to file false claims of billing errors using form documents provided by Defendants, and which lack "any individualized, fact-based claims specific to a given credit car account or credit card customer." (Id. ¶ 28.) The consumers are advised to follow up with further form documents when the claims are denied, extending the processing of the claims. (Id. ¶ 29.) Numerous meritless lawsuits have been filed by consumers acting on the advice of Defendants, and using form pleadings, discovery requests, and motions provided by Defendants. (Id. ¶ 30.) Chase has been forced to expend significant resources to process the claims and defend the lawsuits filed by consumers at the instigation of Defendants. (Id. ¶ 35.) In addition, some Chase customers have stopped making payments and defaulted on their obligations to Chase on the advice of Defendants. (Id.) Further, Chase argues that its reputation is being damaged by the false allegations of illegal activity contained in the form complaints provided to consumers by Defendants. (Id.)

---

[1] The facts described herein are taken from Chase's First Amended Complaint and presumed to be true, as appropriate on a motion to dismiss. See In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996).

1    Defendant NAES, Inc. ("NAES"), is a corporation that began
2  providing such fraudulent debt elimination services to Chase
3  customers "by late 2006."  (Id. ¶ 32.)  Defendant Michael
4  Fitzpatrick was the sole officer, director and shareholder of NAES,
5  and oversaw and directed the business of NAES.  (Id. ¶ 3.)  In
6  February 2008, Fitzpatrick filed dissolution papers for NAES with
7  the Nevada Secretary of State.  (Id. ¶ 36.)  Chase alleges, however,
8  that the assets and business operations of NAES were transferred to
9  Stellar Services, which is run by Matson and Defendant Christopher
10 Robinson, as well as others who have not yet been identified.  (Id.
11 ¶¶ 4-5, 37.)

12   Chase's First Amended Complaint asserts six claims for relief:
13 (1) Preliminary and Permanent Injunction; (2) Intentional
14 Interference with Contractual Relations; (3) Defamation; (4) Civil
15 Conspiracy; (5) Alter Ego Against NAES and Fitzpatrick; and (6)
16 Alter Ego Against Stellar Services, Robinson and Matson.

17   Matson's motion to dismiss (#80) was filed on May 26, 2009.
18 Chase opposed (#88) the motion (#80); no reply was filed.  Stellar
19 Services' motion to dismiss (#81) was filed also on May 26, 2009.
20 Chase opposed (#89) the motion (#81), and Stellar Services replied
21 (#92).  Stellar Services' motion (#103) for oral argument on its
22 motion to dismiss (#81) was filed on September 2, 2009.  Chase did
23 not file a response to the motion for oral argument (#103).

24

25            **II. Matson's Motion to Dismiss (#80)**

26   Matson's motion to dismiss (#80) raises four basic issues.
27 First, she argues that the Court lacks personal jurisdiction over

28                                3

1 her, and seeks dismissal on that basis pursuant to Federal Rule of
2 Civil Procedure 12(b)(2). Second, in the alternative, she suggests
3 that the District of Nevada is an inappropriate venue under 28
4 U.S.C. § 1391. Third, she asserts that Chase's First Amended
5 Complaint fails to state a claim, and seeks dismissal pursuant to
6 Federal Rule of Civil Procedure 12(b)(6). Finally, she challenges
7 whether the amount in controversy requirement for diversity
8 jurisdiction is satisfied; this argument falls under Federal Rule of
9 Civil Procedure 12(b)(1), dismissal for lack of subject matter
10 jurisdiction, though she fails to cite to that rule. We will
11 address each of Matson's arguments separately.

12      A. Personal Jurisdiction

13     The plaintiff bears the burden of establishing that this Court
14 has personal and subject matter jurisdiction over the defendant.
15 See Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 862 (9th
16 Cir. 2003). A motion to dismiss for lack of jurisdiction may attack
17 the sufficiency of the complaint, or it may be made as a "speaking
18 motion" attacking the existence of jurisdiction as a matter of fact.
19 Thornhill Pub. Co., Inc. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730,
20 733 (9th Cir. 1979). "Where the jurisdictional issue is separable
21 from the merits of the case, the judge may consider the evidence
22 presented with respect to the jurisdictional issue and rule on that
23 issue, resolving factual disputes if necessary." Id. However,
24 absent an evidentiary hearing, the plaintiff "need only make a prima
25 facie showing of jurisdiction to survive the motion to dismiss."
26 Mattel, 354 F.3d at 862. Further, absent an evidentiary hearing,
27 the non-movant's version of any contested facts must be taken as

28                             4

1  true.    Rhoades v. Avon Prods., Inc., 504 F.3d 1151, 1160 (9th Cir.
2  2007).   Here, Matson makes no arguments regarding jurisdiction based
3  on the sufficiency of the complaint.   Rather, she appears to attack
4  the existence of jurisdiction as a matter of fact, based on the
5  circumstance that she "does not reside in the District of Nevada nor
6  does [she] conduct business in this district."   (D.'s Mot. at 2
7  (#80).)

8       An analysis of personal jurisdiction has two components.
9  First, there must be a statute that gives the court authority to
10 exercise jurisdiction.   Data Disc Inc. v. Sys. Tech. Assoc. Inc.,
11 557 F.2d 1280, 1286 (9th Cir. 1977).   Second, the exercise of
12 jurisdiction must meet Constitutional due process standards.   Id.
13 Because there is no applicable federal statute governing personal
14 jurisdiction, our starting point is Nevada's long-arm statute.   See
15 Fed. R. Civ. P. 4(k)(1)(A); Doe v. Unocal Corp., 248 F.3d 915, 923
16 (9th Cir. 2001)(per curiam).   Nevada's long-arm statute permits the
17 exercise of jurisdiction to the limits of due process.   NEV. REV.
18 STAT. § 14.065; See Abraham v. Agusta, S.P.A., 968 F. Supp. 1403,
19 1407 (D. Nev. 1997).   Thus, our analysis of personal jurisdiction
20 under Nevada's long-arm statute and the Constitution collapse into
21 one, and we consider only whether the exercise of jurisdiction
22 comports with the Fourteenth Amendment's due process requirements.
23      A court may have personal jurisdiction over a defendant in one
24 of two ways: general or specific.   Reebok Int'l Ltd. v. McLaughlin,
25 49 F.3d 1387, 1391 (9th Cir. 1995).   Though Chase argues that
26 exercise of general personal jurisdiction over Matson would be
27 appropriate, there is no need to decide that issue: specific

28                                5

1  jurisdiction alone would be sufficient to survive Matson's motion to

2  dismiss.

3      The Ninth Circuit has established a three-prong test for

4  analyzing a claim of specific personal jurisdiction:

5          (1) The non-resident defendant must purposefully direct
           his activities or consummate some transaction with the
6          forum or resident thereof; or perform some act by which he
           purposefully avails himself of the privilege of conducting
7          activities in the forum, thereby invoking the benefits and
           protections of its laws;
8          (2) the claim must be one which arises out of or relates
           to the defendant's forum-related activities; and
9          (3) the exercise of jurisdiction must comport with fair
           play and substantial justice, i.e., it must be reasonable.
10             The plaintiff bears the burden of satisfying the
           first two prongs of the test.  If the plaintiff fails to
11         satisfy either of these prongs, personal jurisdiction is
           not established.  If the plaintiff succeeds in satisfying
12         both of the first two prongs, the burden then shifts to
           the defendant to present a compelling case that the
13         exercise of jurisdiction would not be reasonable.

14  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir.

15  2004) (internal citations and quotation marks omitted).

16      Chase asserts that Matson has repeatedly engaged in business in

17  Nevada and with Nevada residents, and has presented evidence

18  relating to one instance of such business activity.  Matson engaged

19  in extensive correspondence via e-mail with Lance Taylor-Warren, a

20  Chase customer who utilized the services of Defendants and

21  eventually initiated litigation against Chase using documents and

22  legal advice provided to him by Matson.  (See P.'s Opp. (#88) Exs.

23  C, D, and E.)  It is precisely the sorts of services provided to Mr.

24  Taylor-Warren by Matson that give rise to Chase's claims.

25      The matter is complicated somewhat by the circumstance that Mr.

26  Taylor-Warren was a customer of NAES, and Matson was apparently an

27  employee of NAES at the time of their interactions.  Matson argues

28                              6

1 that her activities on behalf of an employer should not give rise to
2 personal jurisdiction over her as an individual.  The Supreme Court
3 has rejected, however, the notion that "employees who act in their
4 official capacity are somehow shielded from suit in their individual
5 capacity."  Keeton v. Hustler Magazine, 465 U.S. 770, 781 n.13
6 (1984); see also Calder v. Jones, 465 U.S. 783, 790 (1984)
7 ("Petitioners are correct that their contacts with California are
8 not to be judged according to their employer's activities there.  On
9 the other hand, their status as employees does not somehow insulate
10 them from jurisdiction.").  In other words, the existence of a
11 corporate form does not create a due process limit on jurisdiction
12 over the employees of a corporation.  Davis v. Metro Prods., Inc.
13 885 F.2d 515, 520-522 (9th Cir. 1989) (discussing Calder and
14 Keeton).  Though some states have adopted a "fiduciary shield"
15 doctrine that would create such a limit, Nevada is not such a state;
16 rather, as noted above, Nevada's long arm statute permits exercise
17 of jurisdiction to the limits of due process.  See NEV. REV.
18 STAT. § 14.065; c.f. Marine Midland Bank, N.A. v. Miller, 664 F.2d
19 899, 902 (2d Cir. 1981) (explaining fiduciary shield doctrine as
20 formerly applied under New York long-arm statute).  Moreover, Chase
21 has alleged that Stellar Services has taken over the business of
22 NAES since the latter's dissolution, and that Stellar Services is an
23 alter ego of Matson.

24      Taking all reasonable inferences in the non-moving party's
25 favor, as we must in the present procedural posture, it appears that
26 Matson's business activities in Nevada on behalf of NAES and later,
27 allegedly, Stellar Services, satisfy all three prongs of

28                                      7

1 Schwarzenegger test with regard to personal jurisdiction over her
2 individually, as well.  As such, we have personal jurisdiction over
3 Matson, and her arguments to the contrary are rejected.

4          B. Venue

5          In a diversity case, venue is appropriate in a district where
6 (1) any defendant resides, if all defendants reside in the same
7 state, (2) a substantial part of the events giving rise to the claim
8 occurred, or (3) where any defendant is subject to personal
9 jurisdiction at the time the action is commenced, if there is no
10 district in which the action may otherwise be brought.  28 U.S.C. §
11 1391(a).  Matson's argument that Nevada is an inappropriate venue
12 invokes only the first of these subsections, asserting that Matson
13 does not reside in Nevada, nor does she conduct business here.

14         As discussed above, the evidence does not support the second
15 part of Matson's argument: it appears that she has conducted
16 business in Nevada.  In any case, Matson offers no evidence or
17 argument that demonstrates venue in Nevada would not be appropriate
18 pursuant to 28 U.S.C. § 1391(a)(2), as a place where a substantial
19 part of the events giving rise to Chase's claims occurred.  Chase's
20 claims are based, at least in part, on debt elimination schemes
21 involving Chase customers who are Nevada residents, and who filed
22 claims and lawsuits against Chase in Nevada.  As such, a substantial
23 part of the events giving rise to Chase's claims occurred in Nevada.
24 Thus, venue is proper in Nevada pursuant to 28 U.S.C. § 1391(a)(2).

25         C. Failure to State a Claim

26         Matson's argument that Chase's First Amended Complaint fails to
27 state a claim upon which relief can be granted is based in part on a

28                                  8

1 purported lack of specificity.  Matson asserts that Chase "has
2 failed to identify any damages with the exception of possible legal
3 fees and costs associated with litigation against its cardholders."
4 (Mot. at 4 (#80).)  Further, Matson notes that Chase "has failed to
5 identify any specific action against any cardholder(s) [in] which it
6 has incurred any legal fees or costs."  (Id.)

7      Federal Rule of Civil Procedure 8(a) does not require a
8 plaintiff to plead the details that Matson asserts are lacking from
9 Chase's First Amended Complaint.  The First Amended Complaint (#64)
10 contains "a short and plain statement of the grounds for the court's
11 jurisdiction," "a short and plain statement of the claim showing
12 that the pleader is entitled to relief," and a "demand for the
13 relief sought."  FED. R. CIV. P. 8(a).  Indeed, Chase's complaint
14 describes the factual basis for its claims in some detail, as we
15 have summarized above.  Though the specific Chase customers who have
16 acted on Defendants' alleged debt elimination schemes are not named,
17 Matson has demonstrated no reason why a heightened pleading
18 standard, so as to require such details, should be required in this
19 case.

20      Matson further asserts that the First Amended Complaint "fails
21 to establish any damages which have not already been awarded
22 previously."  (Mot. at 5 (#80).)  The premise underlying this
23 assertion is that the only damages claimed by Chase are attorney's
24 fees and court costs incurred in litigation with cardholders.
25 Matson assumes that Chase either would have already recovered these
26 alleged damages in the judgments against the Chase customers, or
27
28                                    9

1 that Chase was not entitled to such damages, because the customers
2 prevailed.

3    Matson's argument fails for several reasons.  First, under the
4 American rule, a prevailing party normally does not recover
5 attorney's fees.  See, e.g., Buckhannon Bd. and Care Home, Inc. v.
6 W. Va. Dep't of Health and Human Res., 532 U.S. 598, 602 (2001).
7 Matson's assumption that if Chase prevailed in suits against the
8 cardholders it would have necessarily already recovered its costs
9 and attorney's fees is therefore flawed.

10    Moreover, Matson's characterization of the damages sought by
11 Chase as limited to attorney's fees and costs is simply false.
12 Chase also seeks to recover sums lost due to customers defaulting on
13 obligations at the instigation of Defendants.  (FAC ¶ 35 (#64).)
14 Further, Chase seeks damages to compensate for alleged injury to its
15 reputation from defamatory statements published by Defendants
16 regarding alleged illegal activity on the part of Chase.  (Id. ¶ 60-
17 63.)  In addition, Chase seeks injunctive relief against any future
18 activity by Defendants similar to that which gave rise to this case.
19 (Id. ¶ 48.)  As such, even a cursory examination of Matson's First
20 Amended Complaint reveals that Chase does seek relief that has not
21 already been awarded previously.

22    In short, Chase's First Amended Complaint states a claim to
23 relief that is "plausible on its face."  Bell Atl. Corp. v. Twombly,
24 550 U.S. 544, 570 (2007).  Matson's arguments to the contrary are
25 without merit.  As such, dismissal pursuant to Federal Rule of Civil
26 Procedure 12(b)(6) would be inappropriate.

27

28                                    10

## D. Amount in Controversy

Matson challenges whether we have subject matter jurisdiction over this action, arguing that Chase has "failed to substantiate a controversy that exceed [sic] the sum or value of $75,000.00 . . . ." (Mot. at 2 (#80).) As noted above, the burden of establishing that the Court has jurisdiction over the defendant lies with the plaintiff. Mattel, 354 F.3d at 862. Where the amount in controversy is at issue, "[t]o justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." Crum v. Circus Circus Enters., 231 F.3d 1129, 1131 (9th Cir. 2000) (internal quotation marks omitted). Thus, because the burden of proof to establish jurisdiction lies with the plaintiff, Chase must show that it does not appear to a legal certainty that its claims are for less than the required amount. United States v. S. Pac. Transp. Co., 543 F.2d 676, 682 (9th Cir. 1976).

Matson's argument that the amount in controversy requirement is not met is based on the premise, discussed above in a different context, that the only damages claimed by Chase are attorney's fees and court costs incurred in litigation with cardholders. Matson asserts that Chase either would have already recovered these alleged damages in the judgments against the Chase customers, or that Chase was not entitled to such damages, because the customers prevailed.

Matson's argument fails here, too, and for similar reasons. Under the American rule, a prevailing party normally does not recover attorney's fees. See, e.g., Buckhannon, 532 U.S. at 602. Matson's assumption that if Chase prevailed in suits against the

11

1  cardholders it would have necessarily already recovered its costs
2  and attorney's fees is therefore flawed.  Furthermore, Matson's
3  characterization of the damages sought by Chase as limited to
4  attorney's fees and costs is false.  Chase additionally seeks to
5  recover sums lost due to customers defaulting on obligations at the
6  instigation of Defendants.  (FAC ¶ 35 (#64).)  Also, Chase alleges
7  damage to its reputation from defamatory statements published by
8  Defendants regarding alleged illegal activity on the part of Chase.
9  (Id. ¶ 60-63.)  Moreover, Chase seeks injunctive relief against any
10  future activity by Defendants similar to that which gave rise to
11  this case.  (Id. ¶ 48.)  The amount in controversy requirement may
12  be met where the value of the injunction sought to either party
13  meets or exceeds the statutory minimum.  See McCauley v. Ford Motor
14  Co. (In re Ford Motor Co./Citibank (S.D.), N.A.), 264 F.3d 952, 958
15  (9th Cir. 2001).  Any of these categories of damages could
16  potentially exceed the jurisdictional amount.

17      We conclude that Chase has met its burden of demonstrating that
18  it does not appear to a legal certainty that the amount in
19  controversy is less than the jurisdictional amount.  As such, we
20  have subject matter jurisdiction over this case, and Matson's motion
21  will be denied in that respect.

22

23      **III. Stellar Services' Motion for Oral Argument (#103)**

24      Stellar Services requests oral argument on its motion to
25  dismiss (#81), pursuant to Local Rule 78-2.  Local Rule 78-2
26  provides that "[a]ll motions may, in the court's discretion, be
27  considered and decided with or without a hearing."  Having now

28                                    12

1 examined the papers filed in support of and in opposition to Stellar
2 Services' motion to dismiss (#81), we will deny Stellar Services'
3 request for oral argument.  The issues raised by the motion and the
4 arguments of the parties are clear from the papers, and it does not
5 appear that oral argument would be helpful to the Court.

6      In the alternative to its request for oral argument, Stellar
7 Services requests a ruling on its motion to dismiss (#81) at the
8 Court's "earliest convenience."  This request is granted: we now
9 turn to consideration of the merits of the motion.

10

11               **IV. Stellar Services' Motion to Dismiss (#81)**

12      Stellar Services' motion to dismiss (#81) asserts the same
13 arguments as Matson's motion to dismiss (#80).  Indeed, the two
14 motions are virtually identical, except for the name of the moving
15 party — they even share many of the same typographical errors.
16 Though the evidence presented by Chase relates to business dealings
17 by Matson, on behalf of NAES, it is also alleged that Stellar
18 Services has taken over the business of NAES, including its business
19 conducted in Nevada, and no evidence has been submitted that would
20 demonstrate otherwise.  As such, though the evidence of personal
21 jurisdiction is somewhat weak with regard to Stellar Services, in
22 particular, it is sufficient in the present procedural posture.  We
23 need not elaborate further on the other issues raised by Stellar
24 Service's motion (#81); our discussion above suffices.  The motion
25 (#81) will be denied.

26
27
28                                    13

1

### V. Conclusion

2    We have specific personal jurisdiction over both Matson and

3 Stellar Services, on the basis of the business activities they

4 conduct in Nevada that have given rise to Chase's claims.  Venue is

5 proper in Nevada because Nevada is the district where a substantial

6 part of the events giving rise to the claim occurred.  We have

7 subject matter jurisdiction, because the amount in controversy

8 appears to be satisfied.  Finally, Chase's First Amended Complaint

9 does not fail to state a claim; the allegations are made with the

10 requisite specificity to satisfy Federal Rule of Civil Procedure

11 8(a), and Chase's claims for damages are not limited to amounts

12 already recovered in other cases.

13

14    **IT IS, THEREFORE, HEREBY ORDERED** that Matson's motion to

15 dismiss (#80) is **DENIED**.

16

17    **IT IS FURTHER ORDERED** that Stellar Services' motion for oral

18 argument (#103) is **GRANTED IN PART and DENIED IN PART** on the

19 following basis: Stellar Services' request for oral argument is

20 denied; its request for a ruling on its motion to dismiss (#81)

21 at the Court's "earliest convenience" is granted.

22

23 //

24 //

25 //

26 //

27

28                                        14

1    **IT IS FURTHER ORDERED** that Stellar Services' motion to dismiss

2    (#81) is **DENIED**.

3

4    DATED: January ____8____ , 2010.

5                                        _____

6                                        UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                        15